IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANNA E. DALE | : | |
| | : | |
| v. | : | CIVIL NO. CCB-09-3124 |
| | : | |
| MARTEK BIOSCIENCES CORP., *et al*. | : | |

...o0o...

## MEMORANDUM

Anna E. Dale, proceeding *pro se*, has filed the present action against Martek Biosciences Corp. ("Martek"), and fourteen former officers and directors of Martek (collectively the "individual defendants")[1] alleging that the defendants "fraudulently misrepresented nearly every material aspect, information essential to investors, of Martek Biosciences Corporation, company, to the public equity market from the time of Martek's purchase of OmegaTech in March of 2002 to the present, 2009." (Compl. at 1.) The defendants have filed motions to dismiss or, in the alternative, for summary judgment. The motions have been fully briefed and no oral argument is necessary. For the following reasons, the motions will be granted.

## BACKGROUND

On December 23, 2009, this court granted summary judgment for the defendants in a related case filed by Ms. Dale's brother, Ferenc K. Csabai,[2] against Martek and its officers and directors. *See Csabai v. Martek Biosciences Corp.*, 2009 WL 5206477 (D. Md. Dec. 23, 2009), *aff'd*, 2010 WL 2640251 (4th Cir. June 24, 2010). This court determined that Mr. Csabai's

---

[1] The individual defendants filed two separate motions. The first was filed by Peter L. Buzy, Robert J. Flanagan, Jerome C. Keller, Henry Linsert, Jr., Douglas J. MacMaster, Sandra Panem, and Eugene H. Rotberg. (*See* docket entry no. 14.) The second was filed by George P. Barker, Jules Blake, Thomas C. Fisher, James Flatt, Ann L. Johnson, John H. Mahar, and Richard J. Radmer. (*See* docket entry no. 29.)

[2] Ms. Dale has not disputed the defendants' contention that she is Mr. Csabai's sister.

claims were time-barred. *See Csabai*, 2009 WL 5206477 at *2-3. Ms. Dale makes many of the same allegations in the present lawsuit, which she filed on November 24, 2009. The complaint does not allege that Ms. Dale has ever purchased Martek stock, but her subsequent submissions indicate that the last date on which she purchased Martek securities was April 20, 2006.[3] (*See* Pl.'s Resp. to Martek Mot. Ex. 1.)

The complaint sounds in securities fraud. Ms. Dale alleges there were "three major frauds perpetrated, initiated, on investors in 2002 and 2003 to the present." (Compl. at 2.) The first alleged fraud was the April 2002 purchase of OmegaTech. (*Id*.) The second, though difficult to discern from the complaint, appears to be related to "useless capacity that Martek executives put into play in early 2003" and undisclosed hexane pollution at a Martek's Winchester plant in Kentucky. (*Id*. at 5.) The third fraud alleged by Ms. Dale "was the growth in revenue and EPS from the last quarter of 2002 through the first quarter of 2005", and appears to be based on the theory that the defendants inflated Martek's revenue figures. (*Id*. at 6.) Ms. Dale makes other allegations as well. She alleges, for instance, that there were "3 periods of insider trading": April 2003 - January 2004, September 2004 - April 2005, and September 2005. (*Id*. at 9.) She also alleges that Martek did not disclose its failure to gain a dietary endorsement for its "adult DHA-S" from the National Academy of Sciences ("NAS") on September 5, 2002. (*Id*. at 4.) In addition, she makes various references to a "hoarding conference call" on April 27, 2005, which appears to be related to allegations of hoarding by Martek's customers. (*See e.g., id.* at 6 & 10.)

The defendants have filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment on several grounds, including that the

---

[3]  The defendants argue, and Ms. Dale does not appear to dispute, that she purchased only call options, not stock, in Martek.

2

complaint is barred by the applicable five-year statute of repose and two-year statute of limitations. The individual defendants also argue that dismissal is appropriate under Rule 12(b)(5) for ineffective service of process. For the reasons set forth below, judgment will be entered in favor of the defendants.

## ANALYSIS

*I.     Standard of Review*

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2))

Where, as in this case, materials outside the pleadings are proffered by the parties and

relied on by the court, the motion may be converted to one for summary judgment. *See* Fed. R. Civ. P. 12(b); *Gadsby by Gadsby v. Grasmick,* 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.,* 241 F. Supp. 2d 551, 556 (D. Md. 2003). The parties, however, must be provided with notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment, which can be satisfied when a party is "aware that material outside the pleadings is before the court." *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985); *see also Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 261 (4th Cir. 1998) (commenting that a court has no obligation "to notify parties of the obvious"). In this case, Ms. Dale was on notice and attached documents to her responses. Accordingly, the court will treat the defendants' motions as ones for summary judgment.

Federal Rule of Civil Procedure 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

II.     *Statute of Limitations*

Claims of federal securities fraud are governed by the statute of limitations set forth in 28 U.S.C. § 1658(b).[4] The five-year statute of repose in § 1658(b)(2) bars all of Ms. Dale's claims as to any misrepresentations or other alleged illegal acts that occurred prior to November 24, 2004, five years before the complaint was filed. Moreover, the two-year limitations period in § 1658(b)(1) begins to run when the facts constituting the violation are actually discovered by the plaintiff, or would have been discovered by "a reasonably diligent plaintiff". *Merck & Co., Inc. v. Reynolds*, -- U.S. --, 130 S. Ct. 1784, 1798 (2010).

In this case, most of the fraudulent acts alleged are barred by the five-year statute of repose. These include, for example, the first two "major frauds" alleged by Ms. Dale, (1) Martek's purchase of OmegaTech in April 2002, and (2) excess capacity and hexane pollution at

---

[4]    § 1658(b) provides that:

> [A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of --
>
> (1)    2 years after the discovery of the facts constituting violation; or
>
> (2)    5 years after such violation.

5

Martek's Winchester plaint in 2003, as well as all allegations surrounding Martek's failure to gain NAS approval in September 2002. Furthermore, Ms. Dale's claim that Martek inflated its earnings as part of a third major fraud from 2002 - 2005 is almost entirely barred by the five-year statute of repose. Similarly, all allegations of insider trading occurring before November 24, 2004 are also barred.

In addition, Ms. Dale's complaint is largely barred by the two-year statute of limitations found in § 1658(b)(1) because it is clear that a reasonably diligent plaintiff would have known of the facts forming the basis for this lawsuit by November 24, 2007, two years before Ms. Dale filed suit. *See Reynolds*, -- U.S. --, 130 S. Ct. at 1794 (citing 2 Corman § 11.1.1, at 134). In fact, allegations in the complaint suggest that Ms. Dale had actual knowledge of many of the alleged facts before November 2007. (*See, e.g.,* Compl. at 9 ("[w]hile the information was available in July 2007, 2008 and 2009 exposing a devastatingly different Martek commercial reality from 2002 to the present, some of it was not discovered until recently"); *id*. at 21 ("[hexane explosion at Winchester plant] [d]isclosed April 8, 2003 as non material to finances and operations about a week before a Martek secondary equity offering")). Reasonable diligence would have led to the discovery by November 24, 2007 of the facts forming the basis for Ms. Dale's lawsuit, as most of the events that she alleges were matters of public record and occurred more than two years before she filed suit. For example, a class action filed in this District in 2005 involving Martek, *In re Martek Biosciences Corp. Securities Litigation*, Civ. Action No. MJG 05-1224, also involved allegations of customer hoarding and that the defendants made unrealistic revenue projections in 2004 and 2005. (*See* Haiber Decl. Ex. 1 at ¶¶ 3 & 4.) Moreover, Mr. Csabai repeatedly posted his allegations regarding fraud at Martek on a publicly accessible internet message board in 2006 and 2007. (*See id*. Ex. 2-D & 2-E.) That Ms. Dale appears to be Mr.

6

Csabai's sister only increases the likelihood that she had actual knowledge of the alleged fraudulent acts before November 2007.

Furthermore, the two-year statute of limitations will not be tolled simply because Ms. Dale alleges the frauds are ongoing. A plaintiff need not have complete exposure to the alleged fraud. Rather, the claims are barred if a reasonably diligent plaintiff would have known of the facts constituting the violation before November 24, 2007. *See Reynolds*, -- U.S. --, 130 S. Ct. at 1798. Ms. Dale's complaint is therefore time-barred and the defendants are entitled to summary judgment.[5] A separate Order follows.[6]

|  |  |
|---|---|
| July 30, 2010 | /s/ |
| Date | Catherine C. Blake |
|  | United States District Judge |

---

[5] The court notes that Ms. Dale's complaint fails for other reasons as well. Namely, Ms. Dale has failed to sufficiently plead the elements of a private securities fraud claim, including, at the very least, scienter, loss causation, and reliance.

[6] Because the court finds the complaint is time-barred, it need not address the individual defendants' motion to dismiss under 12(b)(5) for ineffective service of process. Furthermore, Ms. Dale's motion to add Steve Dubin, Martek's CEO, as an additional defendant (docket entry no. 4) will be denied.